IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN MONTGOMERY,**

    **Plaintiff,**

                          **Civil Action 2:20-cv-4489**
  v.                              **Judge Sarah D. Morrison**
                          **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kevin Montgomery, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

                    **I.    BACKGROUND**

Plaintiff filed his applications for disability insurance benefits and supplemental security income in September 2017, alleging that he has been disabled since September 10, 2015, due to type I diabetes and extreme loss of eye sight. (R. at 326-32, 361.) Plaintiff's applications were denied initially in April 2018 and upon reconsideration in June 2018. (R. at 169-230.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 274-75.) Administrative

1

Law Judge Jennifer Smiley (the "ALJ") held a video hearing on August 15, 2019, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 139-68.) A Vocational Expert ("VE") and medical expert, Dr. Hema Sugumaran, also appeared and testified. (*Id.*) On September 3, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 231-49.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and his relevant hearing testimony as follows:

> [Plaintiff] reported that he was diagnosed with type I diabetes at age 19 and has experienced extreme loss of eyesight. He testified that his predominant diabetic symptom has been issues with his eyesight, although he also alleged neuropathy and numbness, for which he has not sought treatment. He said that his right eye corneal transplant did not help much. He testified that he read from a tablet with the typeface enlarged and that he has problems seeing details. He also described blurring in his right[-]side peripheral vision. He said that he does not drive anymore but he is able to live alone in the country and gets rides from his retired parents or a friend.
>
> ***
>
> As for his daily activities, despite his allegations and eye limitations, [Plaintiff] is able to live alone and perform personal care with no problems. He can manage and maintain his home. He does housework, cooks meals, shops, and goes outside all of the time during the day, although he does not drive. He manages his own money and pays bills. He reported using a magnifying glass to tinker with small engines. He engages in social activities with friends and family. He testified that he can read using reading glasses with three times magnification, and that he reads on a tablet with words enlarged.

(R. at 238-240 (internal citations omitted).)

### III. MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical symptoms as follows:

> The medical evidence documents that [Plaintiff] was diagnosed with diabetes in 1994 and is insulin dependent. His diabetes was noted as stable with medications for 20 years. In March 2014 and April 2015, he had conjunctival autograft surgery. At a post-operative follow-up on April 29, 2015, he was doing well. A June 2016 letter from his eye surgeon noted that he had developed inflammatory keratopathy, which decreased his visual acuity in his right eye to 20/200+. On October 19, 2016, his vision was measured as 20/200 PHNI in the right eye and 20/50 plus 2 PHNI in the left eye. He then had Avastin injections in his right eye, which made his corneal neovascularization markedly less intense.

> On January 19, 2017, [Plaintiff] presented as a new patient with Thomas Mauger, M.D., for treatment of his vision issues. He had completed two out of three Avastin injections for diabetic macular edema. He reported intermittent dryness and irritation that was temporarily resolved with treatment, and stable blurred vision greater on the right than left. He had a third Avastin injection on February 3, 2017. At a June 12, 2017, follow up, he reported that his eyes were more comfortable after starting serum tears. On September 27, 2017, he had visual acuity 20/200 PHNI in the right eye and 20/70 in the left eye; he received another Avastin injection. At his six-month follow up with Dr. Mauger in December 5, 2017, his vision was 20/400 on the right eye and 20/50 on the left eye.

> On January 11, 2018, at the request of the state agency, [Plaintiff] underwent a physical consultative exam with internist Ellen Offutt, M.D. Notes from that examination indicate that he had visual acuity in both eyes of "20/0." Notes also indicate that his visual fields were normal by confrontation. He was able to walk around the office, although he had trouble seeing items placed on the table and faced the wrong direction when the examiner pointed for him to turn one way. He reported that he could read occasionally, but only very large print. He ambulated with a normal gait and had no signs of diabetes neuropathy. Other than his visual findings, [Plaintiff's] exam was essentially negative.

> On January 22, 2018, [Plaintiff] underwent corneal transplantation surgery of his right eye. A week later, he reported some irritation but was generally doing well. By April 27, 2018, his vision had improved to counting fingers in the right eye and 20/70 in the left eye. He was using Prednisone and Ofloxacin in the right eye and artificial tears in both eyes. On June 28, 2018, he underwent a lateral tarsorrhaphy procedure on his right eye. At a follow-up a week later, he was doing well, with left eye vision remaining 20/70. The tarsorrhaphy was opened up in October 2018, at which point his vision was tested at 20/300 in his right eye, and 20/80 in the left.

3

> Later vision testing ranging from 20/400 to finger counting in the right eye and 20/60 to 20/150 in the left.
>
> [Plaintiff] underwent trichoablation procedures of his right upper eyelashes to address irritation in January, March, May, and June 2019. He was also treated for a right eye corneal ulcer with improvement and resolution. His vision exam from May 17, 2019, showed counting fingers at one foot in the right eye and 20/80 +1 in the left. On August 7, 2019, his ophthalmologist indicated that [Plaintiff's] vision was 20/400 in the right eye and 20/70 in the left eye.

(R. at 239-240 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On September 3, 2019, the ALJ issued her decision. (R. at 231-49.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2021. (R. at 237.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since September 10, 2015, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of diabetes with retinopathy, corneal ulcers in the right eye, neurotropic ketertropy in both eyes, corneal scars, and status post

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is [Plaintiff] engaged in substantial gainful activity?
2. Does [Plaintiff] suffer from one or more severe impairments?
3. Do [Plaintiff]'s severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering [Plaintiff]'s residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering [Plaintiff]'s age, education, past work experience, and residual functional capacity, can [Plaintiff] perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

4

corneal transplant in the right eye. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and frequently crawl. He must avoid exposure to workplace hazards including unprotected heights, moving mechanical parts and operating motor vehicles. He can handle and work with large objects; can avoid ordinary hazards such as boxes on the floor, doors ajar, and approaching people or objects; cannot work with small objects such as threading a needle or work with small nuts, screws, or bolts; cannot read small print such as newspaper or book print; and [] no work requiring peripheral vision.

(R. at 238.)

Relying on the VE's testimony, the ALJ found that Plaintiff's limitations precluded his ability to perform his past relevant work as a heavy equipment operator, but that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 242-243.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since September 10, 2015, the alleged onset date. (R. at 243.)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

5

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth three assignments of error: (1) the ALJ erred in not considering and addressing evidence from a nonmedical source; (2) the ALJ's RFC is not supported by substantial evidence; and (3) the ALJ violated SSR-00-4P by not resolving the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (ECF No. 13 at PAGEID ## 1175-1182.) Specifically, Plaintiff argues that "the ALJ failed to address or acknowledge the third-party statement written by . . . [Plaintiff's] mother," which Plaintiff states

"provided additional insight into [Plaintiff's] abilities and limitations, corroborating his hearing testimony." (*Id.* at PAGEID # 1175.) Plaintiff argues this oversight constitutes reversible error under 20 C.F.R. §§ 416.927(f)(2). (*Id.* at PAGEID ## 1175-1176.) With regard to the ALJ's RFC, Plaintiff argues that the opinions on which the ALJ relied "did not have all of the information necessary to form a complete opinion," so "it can only be concluded that the ALJ crafted a [RFC] based on her own interpretation of the medical evidence, determining the limitations in [Plaintiff's] visual fields herself." (*Id.* at PAGEID ## 1177-1180.) Finally, Plaintiff argues that "[a]though the ALJ asked if the [VE's] testimony was consistent with the Dictionary of Occupational Titles ("DOT") after her series of questions, the ALJ failed to confirm that the answers to Counsel's questions of the [VE] were also consistent with the DOT," which "cannot be considered harmless error." (*Id.* at PAGEID ## 1180-1182.)

In response, the Commissioner argues that all three of Plaintiff's arguments fail. (*See* ECF No. 14.) Specifically, the Commissioner argues that 20 C.F.R. § 416.927, the regulation on which Plaintiff relies for his first argument, is not applicable to this case, as that regulation only applies to claims filed before March 27, 2017 – not claims like this one, which were filed on or after March 27, 2017. (*Id.* at PAGEID ## 1192-1193.) Further, the Commissioner argues that the ALJ did not need to consider the letter by Plaintiff's mother because it was essentially a statement on an issue reserved to the Commissioner, and because it was either largely duplicative of Plaintiff's own allegations (for which the ALJ accounted) or completely unsupported by the record. (*Id.* at PAGEID ## 1193-1195.) As for the RFC, the Commissioner argues that there was extensive evidence on Plaintiff's visual impairment and that the ALJ – and the three doctors on which the ALJ based her decision – gave Plaintiff the benefit of the doubt in crafting the RFC. (*Id.* at PAGEID ## 1196-1200.) Finally, the Commissioner argues that the ALJ fulfilled

7

her duty under SSR 00-4p. (*Id.* at PAGEID ## 1201-1203.)

Plaintiff did not file a Reply brief. Accordingly, the matter is ripe for judicial review. The Court will address each of Plaintiff's three arguments separately.

**A.   The ALJ Was Not Required to Discuss the Letter Submitted by Plaintiff's Mother.**

For Plaintiff's first argument, Plaintiff submits that the ALJ's failure to discuss a letter from Plaintiff's mother constitutes reversible error. (ECF No. 13 at PAGEID # 1175.) This argument, however, is predicated on Social Security regulations that do not apply to Plaintiff's claim. While Plaintiff is correct that the letter constitutes "evidence from [a] nonmedical source,"[2] and that 20 C.F.R. § 416.927(f)(2) provides that the ALJ "generally should explain the weight given to opinions from [nonmedical sources]," Plaintiff is incorrect that 20 C.F.R. § 416.927(f)(2) applies to this case. Rather, 20 C.F.R. § 416.927 expressly applies only to "claims filed before March 27, 2017." Here, Plaintiff filed his claims on September 25, 2017. (R. at 326-332.) Accordingly, the operative regulation is 20 C.F.R. § 416.920c. *See* 20 C.F.R. §§ 416.920c ("For claims filed on or after March 27, 2017, the rules in this section apply."), 416.927 ("For claims filed on or after March 27, 2017, the rules in § 416.920c apply.").

Under the applicable regulation, the ALJ is "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d); *see also Kulp v. Comm'r of Soc. Sec.*, No. 2:20-cv-6188, 2021 WL 4895342, at *14 (S.D. Ohio Oct. 20, 2021) ("Although an ALJ must consider all evidence in a claimant's file . . . an ALJ is not required to

---

[2] Evidence from nonmedical sources include "any information or statement(s) from a nonmedical source (including [a claimant]) about any issue in [a claimant's] claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4).

articulate how evidence from a nonmedical source was considered."). Accordingly, Plaintiff's first statement of error is not well taken.

**B.      Substantial Evidence Supports the ALJ's RFC Finding.**

Regarding to Plaintiff's second argument, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in the case file. (*Id*.) The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).

Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. (*Id*.) If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent

9

with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . "  §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ weighed the multiple medical source opinions throughout the record as follows:

> The consultative examiner, Dr. Offutt, who is an internist and not an eye specialist, opined that [Plaintiff] was severely limited in his ability to bend, stoop, lift, walk, crawl, squat, carry, and travel. I am not persuaded by this opinion. While it is reasonably consistent with the results of Dr. Offutt's basic vision examination – which showed that at that time, [Plaintiff] had minimal vision in both eyes – it is not consistent with the bulk of the record, which shows that [Plaintiff] regained significant visual functioning, particularly in his left eye, after subsequent procedures, as well as [Plaintiff's] reported activities, which are discussed above. I further note that because Dr. Offutt is not an ophthalmologist, she did not do more than basic vision testing and did not provide a function-by-function analysis of [Plaintiff's] visual limitations.
>
> On April 5, 2018, non-examining state agency medical consultant, Leon Hughes M.D., opined that [Plaintiff] had no exertional limitations but could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and frequently crawl. Dr. Hughes opined that [Plaintiff] has limitations in near acuity, far acuity, depth perception, and accommodations in both eyes, but was unlimited in color vision and field of vision. Because of this, he opined that [Plaintiff] could engage in activities that do not require binocular vision, could read small print occasionally, could do no fine detail work, and should avoid all exposure to hazards including commercial driving, hazardous machinery and unprotected heights. Dr. Hughes also noted that these limitations do not represent the best visual capacity of [Plaintiff], as there was reliance on uncorrected visual acuities, and that [Plaintiff's] the best correct visual acuities should improve. At the reconsideration level, Leigh Thomas, M.D., affirmed Dr. Hughes opinion and findings. **I find these opinions somewhat persuasive and adopt the postural and environmental limitations, which are consistent with [Plaintiff's] low vision exams. Drs. Hughes and Thomas acknowledged, however, that their opinion was not based upon the most [Plaintiff] could do because of the likely improvement in his visual abilities, and they did not have the ability to review the most recent eye treatment records included in Exhibit 21F.**
>
> At the hearing, board certified ophthalmologist Dr. Hema Sugumaran opined that [Plaintiff] would have difficulty with near and distance visual acuity; depth perception including motor vehicle operation, unprotected heights, and moving mechanical parts; and small object manipulation like threading a needle, manipulating screws nuts, and bolts. She indicated that while [Plaintiff] may have

> visual field limitations, she was unable to opine on that because the record lacked visual field testing. I am persuaded by Dr. Sugumaran's opinion, as she is a specialist and was able to review the entire medical record. The postural and environmental limitations given by the state agency consultants are consistent with Dr. Sugumaran's opinion regarding [Plaintiff's] limitations, and I have therefore included them. I have also limited [Plaintiff] to handling and working with large objects and avoiding ordinary hazards, but no work with small objects, based on Dr. Sugumaran's opinion that [Plaintiff] would have difficulty with small object manipulation. **While Dr. Sugumaran indicated that she was unable to offer an opinion on [Plaintiff's] visual field, I do note that [Plaintiff] has at least intermittently reported blurred vision and loss of peripheral vision in his right eye, including during his hearing testimony, and I have therefore limited him to no work requiring peripheral vision. Based on [Plaintiff]'s testimony regarding his difficulty with reading small print without use of a magnifying glass, I have also limited him to work that does not require reading small print.**
>
> On August 7, 2019, [Plaintiff]'s treating ophthalmologist Tyler Ostra M.D. opined that [Plaintiff's] limited vision causes him significant disability and prevents him from driving. Similar statements about [Plaintiff]'s inability to drive were also made by ophthalmologist Chet Ridenour, D.O. This opinion regarding driving is persuasive, and I have included this limitation in [Plaintiff]'s residual functional capacity. To the extent that the remainder of Dr. Ostra's opinion goes to the ultimate issue of disability, I do not find it inherently valuable or persuasive.

(R. at 240-241 (emphasis added; internal citations omitted).)  The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and frequently crawl. He must avoid exposure to workplace hazards including unprotected heights, moving mechanical parts and operating motor vehicles. He can handle and work with large objects; can avoid ordinary hazards such as boxes on the floor, doors ajar, and approaching people or objects; cannot work with small objects such as threading a needle or work with small nuts, screws, or bolts; **cannot read small print such as newspaper or book print; and can [do] no work requiring peripheral vision**.

(R. at 238 (emphasis added).)

Here, Plaintiff argues that "both the State agency physicians [Drs. Hughes and Thomas] and the Medical Expert [Dr. Sugumaran] indicated that they did not have all of the information

11

necessary to provide a complete opinion regarding [Plaintiff's] visual limitations." (ECF No. 13 at PAGEID # 1178 (citing R. at 160 (Dr. Sugumaran's hearing testimony that Plaintiff "may also have some visual field limitations, but that's difficult for me to say because I haven't been provided with the testing."), 225 (Dr. Thomas' comment that "[t]his RFC does not represent the best visual capability of [Plaintiff] as there is a reliance on uncorrected visual acuities.")).) Plaintiff interprets this to mean that the opining physicians "did not have all of the information necessary to form a complete opinion," and concludes that "the ALJ crafted a [RFC] based on her own interpretation of the medical evidence, determining the limitations in [Plaintiff's] visual fields herself." (*Id.* at PAGEID # 1179.)

Plaintiff's argument is not well taken. As the Commissioner correctly observes, the ALJ generally evaluates a claimant's visual disorder based on measurements of the claimant's best corrected central visual acuity, versus uncorrected visual acuity. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §2.00A4. Here, in the absence of measurements of Plaintiff's best corrected central visual acuity, the ALJ afforded Plaintiff the benefit of the doubt by assessing limitations that accounted for Plaintiff's uncorrected visual acuity and pre-surgical condition. (R. at 241.) While the ALJ expressly acknowledged that Drs. Hughes and Thomas' opinions were "not based upon the most [Plaintiff] could do *because of the likely improvement in his visual abilities*," the ALJ resisted the option of projecting Plaintiff's improvement and instead evaluated Plaintiff in his uncorrected condition. (*Id.* (emphasis added).) The ALJ also expressly accounted for Plaintiff's testimony that "his right eye corneal eye transplant did not help much." (R. at 239; *see also* R. at 150-151 (Plaintiff's testimony that "I haven't seen much benefit" from the procedure).)

The ALJ also sought the in-person testimony of medical expert Dr. Sugumaran, a physician who was able to review the entire record (including records documenting Plaintiff's post-surgical condition) and whose opinion was generally consistent with Drs. Hughes and Thomas' opinions (regarding Plaintiff's pre-surgical condition).  (*Id.*)  Again, the ALJ also afforded Plaintiff the benefit of the doubt by accepting at face value Plaintiff's subjective complaints that he has blurred vision and loss of peripheral vision in his right eye, and that he has difficulty reading small print without a magnifying glass.  (*Id.*)  Accordingly, the Undersigned is satisfied that the ALJ relied on substantial evidence throughout the record in determining Plaintiff's RFC, especially in the absence of any argument from Plaintiff that he actually is more limited than what the ALJ determined.  In this regard, Plaintiff has wholly failed to meet his burden to provide medical evidence that demonstrates that he is disabled.  *See* 20 C.F.R. §§ 404.1512(c), 416.912(c).

To that end, to the extent Plaintiff argues that the Court should remand to permit visual field screening tests to supplement the medical record, the Undersigned disagrees.  First, ALJs are not required to order a consultative examination if there is a considerable amount of medical evidence in the record concerning plaintiff's alleged ailments and his resulting functional capability.  *See Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) ("Given the considerable amount of medical evidence in the record concerning [Plaintiff's] cardiovascular problems and his resulting functional capability, including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence, the ALJ was not obligated to order a consultative examination[.]").  That is the case here.  As discussed, there was extensive substantial evidence on this issue, and Plaintiff has failed to carry his burden to show otherwise.  Regardless, as the

13

Commissioner again correctly observes, visual field screening tests are not used to determine whether a claimant's impairment meets or exceeds a listing or to assess RFC limitations. *See* 20 C.F.R. Part 404, Subpart 1, § 2.00A6f ("We will not use the results of visual field screening tests . . . to determine that your impairment meets or medically equals a listing or to evaluate your residual functional capacity."). Finally, additional visual field screening tests would serve no purpose, as the relevant limitations in the RFC (which were beyond those opined by Drs. Hughes, Thomas, and Sugumaran) all came from Plaintiff's own subjective complaints.[3] It would only serve as a waste of time (from both a legal and a practical perspective) to remand to permit visual field screening tests because they would have no impact on the outcome on this case.

For these reasons, it is clear that the ALJ did not "craft[] a [RFC] based on her own interpretation of the medical evidence," as Plaintiff suggests. (ECF No. 13 at PAGEID # 1179.) Rather, the ALJ properly constructed an RFC based on the opinions of Drs. Hughes, Thomas, and Sugumaran, the objective medical records on which they relied, and Plaintiff's own subjective complaints. The issue before the Court is whether the ALJ's RFC determination is supported by substantial evidence, and the Undersigned finds that it is. While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the

---

[3] Plaintiff also argues that a proper RFC "may be . . . less restrictive than [Drs. Hughes, Thomas, and Sugumaran] asserted, because they did not have all of the information necessary to form a complete opinion. (ECF No. 13 at PAGEID # 1179.) This argument does nothing for Plaintiff's position, as the Commissioner correctly observes that if the Court were to remand on that basis, "Plaintiff would still not be disabled and the outcome of the case would not change." (ECF No. 14 at PAGEID # 1196 n.4 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game") (internal citation and quotation omitted)).

bases for her RFC determination, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). Under these circumstances, Plaintiff's second statement of error is without merit.

**C.     The ALJ Complied with SSR 00-4p.**

Finally, Plaintiff also takes issue with the ALJ's reliance on the VE's testimony. (ECF No. 15 at PAGEID ## 1039-1045.) Specifically, Plaintiff argues that the ALJ violated SSR 00-4p, which provides in relevant part that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." *See* SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Plaintiff maintains that the ALJ did not do so here, and suggests there is (while failing to identify) an unresolved conflict between the VE's testimony and the DOT. (ECF No. 13 at PAGEID ## 1180-1182.)

The Undersigned disagrees. As shown below, the ALJ expressly asked the VE whether his testimony was consistent with the information provided in the DOT:

> Q:     All right. Is your testimony consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations in the revised DOT?
>
> A:     Yes.

15

(R. at 164.) Given this response, the ALJ was under no further obligation to interrogate the VE. *See Creech v. Astrue*, No. 1:12-CV-161, 2013 WL 427627, at *7 (S.D. Ohio Feb. 4, 2013), *report and recommendation adopted sub nom. Creech v. Comm'r of Soc. Sec.*, No. 1:12-CV-00161, 2013 WL 1438001 (S.D. Ohio Apr. 9, 2013) ("Where[] the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE.") (citing *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)).

To that end, the burden was actually on Plaintiff's counsel, not the ALJ, to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009) ("As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief.") (citing *Ledford v. Astrue,* 311 Fed.Appx. 746, 757 (6th Cir. 2008)); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 499 (6th Cir. 2012) ("[Plaintiff's] attorney had the opportunity, but failed to cross-examine the vocational expert regarding her position that her testimony was consistent with specific provisions of the Dictionary of Occupational Titles."). Here, because Plaintiff's counsel chose not to investigate further, Plaintiff's final statement of error also is without merit.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits, and that the ALJ's decision was made pursuant to proper legal standards. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: November 19, 2021**            /s/ *Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **UNITED STATES MAGISTRATE JUDGE**